THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JOHN CHAD ANDREW,<br><br>           Plaintiff,<br><br>v.<br><br>THE TRAVELERS HOME AND MARINE INSURANCE COMPANY,<br><br>           Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [25] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:20-cv-00179-DBB<br><br>District Judge David Barlow |

Plaintiff John Chad Andrew brought this action against Defendant Travelers Home and Marine Insurance Company for breach of contract and breach of the duty of good faith and fair dealing.[1] Travelers moved for summary judgment.[2] Because there are genuine issues of material fact in this case, Travelers' motion for summary judgment is DENIED.

## BACKGROUND

Plaintiff John Chad Andrew obtained a homeowner's insurance policy from Defendant Travelers Home and Marine Insurance Co.[3] In 2019, Andrew submitted a claim for cracking and damage to a second-floor outdoor deck and stairs.[4] Andrew claimed that this damage was due to ice dams that formed on the decks.[5] Travelers sent an adjuster, Landon Webb, to inspect the damage—Andrew claims that Webb told him that policies do not typically cover patios around a

---

[1] *See* Complaint at ¶¶ 17–31, ECF No. 2-1, filed Dec. 16, 2020.
[2] *See* Motion for Summary Judgment, ECF No. 25, filed Jan. 20, 2022.
[3] *See* Homeowners Policy Booklet ("Policy"), ECF No. 26-1, filed Jan. 20, 2022
[4] *See* Denial Letter, ECF No. 26-2, filed Jan. 20, 2022; ECF No. 26-4 at 16–47, filed Jan. 20, 2022 (photos of the damage).
[5] Andrew Decl. at ¶¶ 7–12, ECF No. 44-1, filed Mar. 25, 2022.

pool or on the ground, but because the decks are elevated and built into the structure, they would be covered.[6] On June 3, 2019, Travelers issued a denial letter stating that the damage was not covered because it fell under an exclusion for loss caused by "[f]reezing, thawing, pressure or weight of water or ice . . . to a . . . [f]ence, pavement, patio or swimming pool."[7] In its denial letter, Travelers referred to Andrew's deck as a "patio."[8]

After Andrew attempted to obtain an explanation from Travelers as to the denial letter, Travelers sent a second letter in June 2020 which abandoned the justification for denial in the first letter and instead argued that Andrew's claim was barred by an exclusion for damages caused by "constant and repeated seepage" of water or "wear and tear."[9]

On November 25, 2020, Andrew filed a complaint against Travelers in state court for breach of contract and breach of the duty of good faith and fair dealing.[10] Travelers removed to federal court.[11] On January 20, 2022, Travelers moved for summary judgment on both of Andrew's claims.[12]

## STANDARD

A court grants summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[13] Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of any party."[14] The moving

---

[6] *Id.* ¶ 19.
[7] Denial Letter at 1.
[8] *Id.*
[9] Second Denial Letter at 1, ECF No. 26-3, filed Jan. 20, 2022.
[10] *See* Complaint at ¶¶ 17–31.
[11] Notice of Removal at 1, ECF No. 2, filed Dec. 16, 2020.
[12] *See* Motion for Summary Judgment at 1.
[13] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

party is also entitled to summary judgment if "the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[15] Both evidence and reasonable inferences drawn from that evidence are construed in the light most favorable to the nonmovant.[16]

## DISCUSSION

Travelers seeks summary judgment on both of Andrew's claims. The court first considers Andrew's breach of contract claim, then turns to examine Andrew's bad faith claim.

### I. Travelers is not entitled to summary judgment on Andrew's breach of contract claim.

First, Travelers argues that it is entitled to summary judgment on Andrew's breach of contract claim because "the damages claimed by [Andrew] all arise from long-term wear and deterioration of the underlying concrete surfaces" and "[t]he Policy plainly excludes" these losses under three policy exclusions.[17]

In Utah, insurance policies are generally interpreted according to the rules of contract interpretation.[18] "Courts interpret words in insurance policies according to their usually accepted meanings and in light of the insurance policy as a whole."[19] "Policy terms are harmonized with the policy as a whole, and all provisions should be given effect if possible."[20] In general, insurers may exclude from coverage certain losses "by using language which clearly and unmistakably

---

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[16] *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999).
[17] Motion for Summary Judgment at 5–6. Travelers' first denial of coverage was predicated on an exclusion for loss caused by "[f]reezing, thawing, pressure or weight of water or ice . . . to a . . . [f]ence, pavement, patio or swimming pool." *see* Denial Letter at 1. Its second denial of coverage was based in part on an exclusion for "constant and repeated seepage" of water. Second Denial Letter at 1. In its motion for summary judgment, Travelers has not argued that these exclusions are bases to deny coverage.
[18] *Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685, 686 (Utah 1999).
[19] *Id.*
[20] *Id.*

communicates to the insured the specific circumstances under which the expected coverage will not be provided."[21]

When interpreting an insurance policy, "any ambiguity or uncertainty in the language of [the policy] must be resolved in favor of coverage."[22] Ambiguity exists if a provision of a contract "is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies."[23] A proposed interpretation "must be plausible and reasonable in light of the language used."[24] "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[25]

The insurance policy at issue in this case is a homeowners insurance policy that insures against "risk of direct physical loss"[26] to Andrew's "dwelling" and "structures attached to the dwelling."[27] The policy includes exclusions, three of which Travelers argues entitle it to summary judgment.

First, the policy excludes loss caused by "[w]ear and tear, marring, [or] deterioration."[28]

Second, the policy excludes loss caused by "[s]ettling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings."[29]

---

[21] *Id.* (quoting *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1274, 1275 (Utah 1993)).
[22] *Doctors' Co. v. Drezga*, 218 P.3d 598, 603 (2009) (quoting *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988)).
[23] *Id.* (quoting *WebBank v. Am. Gen. Annuity Serv. Corp.*, 54 P.3d 1139, 1145 (Utah 2002)).
[24] *S.W. Energy Corp. v. Con'l Ins. Co.*, 974 P.2d 1239, 1242 (Utah 1999) (quoting *First Am. Title Ins. Co. v. J.B. Ranch*, 966 P.2d 834, 837 (Utah 1998)).
[25] *WebBank*, 54 P.3d at 1145.
[26] Policy at 10.
[27] *Id.* at 3.
[28] *Id.*
[29] *Id.* at 10–11.

And third, the policy excludes loss caused by "[m]echanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself."[30]

Travelers argues that there is "undisputed evidence" that plainly demonstrates the applicability of the exclusions for wear and tear; settling, shrinking, bulging or expansion; and mechanical breakdown or latent defect.[31] It points to an expert report in which Rimkus Consulting Group, an engineering consulting firm, concluded that "[d]amage observed in the photographs at the perimeter of the concrete porch topping likely occurred over a long period of time (years) rather than a single sudden event and was most likely due to age-related deterioration of the concrete, freeze/thaw cycles, expansion/contraction, and shrinkage of the concrete."[32] Rimkus based its opinions on photographs taken by Utah Public Adjusters.[33] The report also noted that the "[p]hotographs . . . did not provide Rimkus with conclusive evidence of the causation of the stair damage" and that a "physical inspection of the property would help corroborate the conclusions found above."[34]

On the issue of whether an ice dam could have caused the property damage, the report states the following:

> As all parts of the open-air porches would typically be unheated, damage due to ice damming would be expected on the roof, at the transition between the roof over the heated portion of the residence and the roof over the unheated porches. No photographs of the roof were provided. If water were to flow from inside the residence to the porches, ice damming could occur. However, the ice dam would be expected at the transition from heated to unheated space. Evidence of water flowing

---

[30] *Id.* at 10.
[31] Reply in Support of Motion for Summary Judgment ("Reply") at 9, 10, ECF No. 52, filed April 20, 2022.
[32] Rimkus Rep. at 3, ECF No. 26-5, filed Jan. 20, 2022.
[33] *Id.* at 2.
[34] *Id.* at 1, 3.

from inside the residence to the porch was not provided in the photographs, and damage to the porch in those areas was not evident in the photographs provided.[35]

Essentially, although Rimkus concludes that the damage "likely occurred over a long period of time," it was unable to rule out the possibility of damage from an ice dam based on the information before it.[36]

Andrew, on the other hand, submits a declaration asserting that an ice dam caused the property damage. A declaration or affidavit, even if it is self-serving, can be legally competent to oppose summary judgment so long as it is "based upon personal knowledge and sets forth facts that would be admissible in evidence."[37] Here, Andrew's declaration avers that he has "personal knowledge of each statement in this declaration";[38] that an "Ice Dam formed on the decks of his home";[39] that "[w]ithin two weeks of the Ice Dams forming, [he] noticed, for the first time, damage to the edges of the decks at the Property";[40] and that "[p]rior to the Ice Dams, the decks were in good shape, not damaged, and showed no signs of cracking nor any deterioration, or wear and tear."[41]

Travelers argues that the court should disregard Andrew's declaration because he "was not disclosed as an expert [and] is not qualified to opine on ice damming or mechanical causation."[42] But Andrew's declaration is not expert testimony; rather, it is lay-witness testimony

---

[35] *Id.* at 3.
[36] *See id* at 1. In its motion for summary judgment, Travelers also submits several photos of the property damage. Motion for Summary Judgment at 6, 7. These photos do not allow the court to determine that the cause of the damage is undisputed.
[37] *Janny v. Gamez*, 8 F.4th 883, 900 (10th Cir. 2021) (quoting *Speidell v. United States ex rel. IRS*, 978 F.3d 731, 740 (10th Cir. 2020)).
[38] Andrew Decl. at ¶ 2.
[39] *Id.* ¶ 9.
[40] *Id.* ¶ 11.
[41] *Id.* ¶ 10.
[42] Reply at 3, 8, ECF No. 52, filed April 20, 2022.

based on personal knowledge. Andrew declares that he personally observed the ice dams on the property, that there was no damage to the deck prior to the ice dams forming, and that within two weeks of the ice dams forming he noticed the damage to the decks.[43] Travelers also argues that Andrew's declaration is "incredulous" because it does not explain "how an ice dam could occur on a flat surface absent the overhand depicted in [Travelers' expert report]."[44] But Travelers' own expert report undercuts this argument, as it concluded that the damage "likely" occurred over a long period of time but was unable to rule out the possibility that the damage occurred due to an ice dam.[45] Thus, there is a genuine dispute of material fact as to what caused the property damage. As such, Travelers is not correct that there is "undisputed evidence" that plainly demonstrates the applicability of the exclusions for wear and tear; settling, shrinking, bulging or expansion; and mechanical breakdown or latent defect.[46]

At the summary judgment stage, the court is instructed to draw all reasonable inferences in the light most favorable to the nonmovant.[47] Here, based on Andrew's declaration, there is a genuine dispute of material fact as to whether ice dams caused the property damage at issue. As such, the policy exclusions at issue here are not sufficient to warrant summary judgment for Travelers because it is unclear whether any of them apply. Summary judgment is not appropriate on Andrew's breach of contract claim.

---

[43] Andrew Decl. at ¶¶ 7–11.
[44] Reply at 3.
[45] Rimkus Rep. at 1, 3.
[46] *See* Reply at 9, 10.
[47] *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999).

## II. Travelers is not entitled to summary judgment on Andrew's bad-faith claim.

Travelers also seeks summary judgment on Andrew's claim for breach of the duty of good faith and fair dealing. In the first-party insurance context:

> [The] implied covenant of good faith performance contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim.[48]

If an insurer acts reasonably in denying a claim, then the insurer did not contravene the covenant; a denial of a claim is reasonable if the insured's claim is fairly debatable.[49]

In *Jones v. Farmers Insurance Exchange*,[50] the Utah Supreme Court further outlined how courts should treat the "fairly debatable" defense to a bad faith claim. It stated:

> [A] bad faith claim need not be resolved on summary judgment whenever an insurance company argues that the claim was fairly debatable. . . . When making the determination of whether a claim is fairly debatable, a judge should remain mindful of an insurer's implied duties to diligently investigate claims, evaluate claims fairly, and act reasonably and promptly in settling or denying claims. Only when "there [is] a legitimate factual issue as to the validity of [the insured's] claim," such that reasonable minds could not differ as to whether the insurer's conduct measured up to the required standard of care, should the court grant judgment as a matter of law.[51]

In *Jones*, an insurer had denied coverage because it believed that the insured's "self-serving remark" that he had hurt his mouth in an accident and a corroborating doctor's report defied logic and common sense.[52] The Court concluded that, viewing the facts and all reasonable

---

[48] *Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 533 (Utah 2002) (quoting *Gibbs M. Smith, Inc. v. United States Fid. & Guar. Co.*, 949 P.2d 337, 344 (Utah 1997)).
[49] *Id.* at 533–534.
[50] 286 P.3d 301, 305 (Utah 2012).
[51] *Id.* (internal citations omitted).
[52] *Id.* at 306.

inferences in the light most favorable to the plaintiff, it could not conclude that reasonable minds could not differ on whether the claim was fairly debatable.[53]

In *Wheeler v. Allstate Insurance Co.*,[54] the Tenth Circuit applied Utah law and summarized *Jones*, holding that, in any case where an insurance company did not have any objective evidence indicating that there was no coverage at the time it denied the claim, summary judgment on a bad faith claim "is not appropriate unless 'reasonable minds could not differ on whether [the insurer] complied with its duties of diligent investigation, fair evaluation, and reasonable and prompt disposition.'"[55]

Here, Travelers only makes a conclusory argument that, even if the court does not grant summary judgment on Andrew's breach of contract claim, "the [insurance] claim would remain fairly debatable and therefore, there can be no cause of action for bad faith breach of contract."[56] While the merits of Andrew's claim may have been fairly debatable, Travelers does not provide sufficient factual evidence regarding its course of investigating the claim or what objective evidence it had at the time it denied the claim that indicated there was no coverage for the claim.

Andrew, on the other hand, states that "Travelers did not have an adjuster or anyone else physically inspect the decks in person other than Landon Webb," who "stated . . . because the decks are elevated and built into the structure, they would be covered."[57] Andrew further states that, after he received a denial letter in 2019, he "spent a year attempting to get a substantive response from Travelers for the Deck Claim and the reasoning for why Travelers had determined

---

[53] *Id.*
[54] 687 F. App'x 757 (10th Cir. 2017).
[55] *Id.* at 775 (citing *Jones*, 286 P.3d at 305).
[56] Motion for Summary Judgment at 8; Reply at 11.
[57] Andrew Decl. at ¶¶ 19, 22.

that the decks were 'patios' rather than decks";[58] that he "called at least four times . . . but each time Travelers failed to call back";[59] that Travelers "failed and refused to conduct an onsite inspection";[60] and that it took "over a year to obtain a substantive response from Travelers."[61]

As such, reasonable minds could differ as to whether Travelers acted in accordance with its duties to conduct a diligent investigation and evaluate claims fairly and promptly. Viewing the facts and reasonable inferences in the light most favorable to Andrew, the evidence in his declaration creates a triable issue of fact as to Andrew's bad faith claim. Summary judgment is not appropriate on Andrew's bad faith claim.

## ORDER

Because genuine issues of material fact exist in this case, Travelers' motion for summary judgment is DENIED.

Signed June 16, 2022.

BY THE COURT:

David Barlow
United States District Judge

---

[58] *Id.* ¶ 24.
[59] *Id.* ¶ 25–26.
[60] *Id.* ¶ 27.
[61] *Id.* ¶ 28.